IN THE UNITED SATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DUANE MONTGOMERY | : | |
| 4037 Doney St. | : | |
| Whitehall, Ohio 43213, | : | Case No. |
| | : | |
| Plaintiff, | : | Judge: |
| | : | |
| v. | : | Magistrate: |
| | : | |
| SIMS-LOHMAN, INC. | : | **COMPLAINT WITH JURY DEMAND** |
| 1687 Jet Way Blvd. | : | **ENDORSED HEREIN** |
| Columbus, Ohio 43219, | : | |
| | : | |
| Defendant. | : | |

1. This is an action for damages arising out of Defendant's violation of the Americans with Disabilities Act (ADA) 42 U.S.C.S. §12101 et seq. and Title VII of the Federal Civil Rights Act of 1991 (42 U.S.C. 2000e, et seq.)

2. This court has subject-matter jurisdiction over Plaintiff's federal law claims pursuant to 42 USCS §12117 and 42 U.S.C. §2000e-5(f)(3).

3. Plaintiff Duane Montgomery is an African American resident of Franklin County, Ohio who is disabled as that term is defined by the ADA.

4. Defendant Sims-Lohman, Inc. is an Ohio corporation licensed and operating in Franklin County, Ohio with corporate offices located in Cincinnati, Ohio.

5. Plaintiff was employed by Defendant as a granite installer from November 2013 until December 17, 2019.

6. Plaintiff suffered a work-related injury on May 13, 2019, while carrying a countertop.

7. He reported his injury to Installation Manager Clay Moore.

8. Moore told him that he would not be sent to the doctor and that he should wait and see how he feels.

9. After two weeks of struggling with the pain, his leg turned purple, and he asked to go to the doctor.

10. Supervisor Chris Domopolis laughed at him and accused him of faking.

11. After seven weeks, Plaintiff finally went to the emergency room.

12. He was diagnosed with a torn groin muscle and placed on work restrictions and ordered to undergo physical therapy.

13. Plaintiff also has a history of back injury, including previous surgery to remove discs at the L4/L5 level.

14. Because he was unable to perform his normal duties, he was placed in the warehouse where he spent time sweeping and performing miscellaneous duties.

15. He was often asked to perform tasks that contradicted his restrictions and was chastised for being injured.

16. On or about November 27, 2019, Plaintiff's doctor determined that, unfortunately, some of his physical restrictions would be permanent.

17. Of most import to his job were the lifting and carrying restrictions.

18. He was prohibited from lifting or carrying more than forty pounds.

19. As a result of an MRI, he learned that his L3 disc was deteriorating. His doctor told him that it was likely related to his job duties.

20. Upon receipt of the permanent restrictions, he spoke with Mr. Domopolis and Mr. Moore.

21. Plaintiff told them about his L3 disc and asked to be transferred to a vacant position in a different department as an accommodation for his permanent work restrictions.

22. He suggested that he be placed in polishing, fabricating, parts delivery or that he be allowed to work on the laminate side of the shop.

23. While on light duty, Montgomery worked in the polishing department for several days.

24. Lifting was not one of the essential functions of the polishing job.

25. The job description does not include lifting among the essential duties of the position. Rather, the document clearly states that an overhead crane is used to load and move stone slabs.

26. On his final workday, Thursday, December 13, 2019, Plaintiff spoke with HR Manager Mark (last name unknown).

27. He implored him to transfer him to one of the open positions in polishing or even a third shift warehouse job which was vacant at the time.

28. Mark informed him, "we just don't want you here."

29. Plaintiff filed a timely EEOC charge alleging race and disability discrimination against Defendant.

30. The charge was dual filed with the Ohio Civil Rights Commission.

31. The EEOC issued Notice of Rights Letter on July 27, 2021 (Attached at Exhibit A).

## COUNT I
## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## (FAILURE TO ACCOMMODATE)

32. Plaintiff restates and incorporates the foregoing paragraphs as if completely rewritten herein.

33. Plaintiff is a qualified individual with a disability as that term is defined by the Americans with Disabilities Act.

34. Defendant regards Plaintiff as an individual with a disability.

35. Plaintiff was able to perform the essential functions of his position with accommodation.

36. Plaintiff requested accommodation that would have allowed him to continue working for Defendant.

37. Plaintiff requested that he be permanently transferred to an alternative position. For example, he requested that he be transferred into a vacant polishing position.

38. Defendant refused to consider Plaintiff for an alternative position and otherwise refused to engage in the interactive accommodation process as required by the ADA.

39. Defendant unlawfully terminated Plaintiff because of his disability.

40. Defendant violated the ADA by failing to accommodate Plaintiff and/or failing to engage in the interactive accommodation process.

41. Plaintiff has been damaged by Defendant's violations of the ADA such that he is entitled to damages, therefore.

42. Defendant acted with willful disregard for Plaintiff's rights such that he is entitled to punitive damages and attorney's fees.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE FEDERAL CIVIL RIGHTS ACT

43. Plaintiff restates and incorporates the foregoing paragraphs as completely rewritten herein.

44. As an African American, Plaintiff is a member of a protected class.

45. Plaintiff was qualified to perform the duties of his position (with or without accommodation).

46. After being placed on permanent restrictions, Plaintiff requested that he be transferred to an alternative position.

47. A Caucasian employee (Jon Ramey) who was injured while working for Defendant was transferred to an alternative position when he could no longer perform the duties of a granite installer.

48. Unlike Mr. Ramey, Defendant refused Plaintiff's request for transfer and thereafter, terminated him because he was no longer able to perform the functions of a granite installer.

49. Upon information and belief, Defendant refused to consider Plaintiff for alternative positions because of his race.

50. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

51. Plaintiff has been damaged by Defendant's unlawful, discriminatory termination of his employment such that he is entitled to damages, therefore.

52. Defendant acted with willful disregard for Plaintiff's rights such that he is entitled to punitive damages and attorney's fees.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully prays that this Court grant him:

a. lost past and future wages and benefits in excess of $75,000;

b. compensatory damages;

c. an amount in excess of $75,000.00 in damages for garden variety emotional distress;

d. an amount in excess of $75,000.00 for punitive damages;

e. attorney fees and costs;

f. prejudgment and post judgment interest;

g. such other equitable and further relief as may be just and appropriate.

Respectfully Submitted,

*/s/Sharon Cason-Adams*
Sharon Cason-Adams (0067550)
AGEE CLYMER MITCHELL & PORTMAN
140 East Town St., Suite 1100
Columbus, Ohio 43215
Telephone: 614-221-3318
Facsimile: 614-221-7308
scasonadams@ageeclymer.com

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues triable before a jury.

/s/*Sharon Cason-Adams*
Sharon Cason-Adams